**Ramon SANABRIA, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 319,2008.

Supreme Court of Delaware.

Submitted: Feb. 25, 2009.
Decided: May 15, 2009.

Santino Ceccotti, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

James T. Wakley, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Ramon Sanabria, appeals from the Superior Court's final judgment of conviction after a jury found Sanabria guilty of Burglary in the Second Degree. On appeal, Sanabria argues that the trial court abused its discretion when it admitted into evidence, through the testimony of a police officer, third-party statements made by a dispatcher. Sanabria also asserts that the erroneous admission of those third-party statements violated his Sixth Amendment right to confront the witnesses against him.

We conclude that the Superior Court abused its discretion in permitting the police officer to testify as to the dispatcher's statements. The State's interest in providing the jury with a background context for the officer's actions could have been accomplished by referring to "information received." The unfair prejudice to Sanabria from having the jury hear the officer repeat the content of the dispatcher's statements outweighed the probative value to the State's case as background informa-

tion.[1] Alternatively, we hold that because there was no limiting instruction that the dispatcher's comments were not being admitted for the truth of their content, the Superior Court violated Sanabria's Sixth Amendment rights under the Confrontation Clause by permitting the police officer to testify about the dispatcher's statements.

### Facts

On July 20, 2007, while working as a nanny at 7 Alders Lane, Teresa Brackin saw a man walk to the back porch of the home next door at 9 Alders Lane. According to Brackin, the man was Hispanic, wearing a multi-colored shirt and distressed jeans, and carrying a cloth bag.

Brackin called 911 and reported the incident to the police. New Castle County Police Officer Hector Garcia responded to the dispatch about Brackin's 911 call. On his way to the scene, Garcia learned from the dispatcher that the alarm company had reported that an alarm had gone off from the home at 9 Alders Lane. When Garcia arrived at the scene about ten minutes later, he walked directly to the back of the home and saw pry marks on the back door, but the door was locked.

Garcia then walked to the front of the house, which appeared undisturbed. At that point, Garcia learned from the dispatcher that the alarm company had reported that a motion detector in the foyer of the home had been activated. Garcia returned to the back door and saw that it was open. Then he heard Brackin yelling, "There he is. There he is." Garcia saw a man, whom he described as Hispanic, wearing a multi-colored polo shirt and faded blue jeans and carrying a black bag, run across the yard of 7 Alders Lane. Garcia tried to chase the man but could

not catch him, and so returned to his squad car and radioed for help.

A short time later, Judy Sargent was returning to her home on North Dupont Road and saw a stranger walking through her fenced-in back yard. She stopped the stranger, asked him what he was doing and asked to see his bag. She found some clothes and a Ziploc baggie inside. She told the man to leave, then called 911.

When the police arrived at Sargent's home, she told them which way the man had gone. The police apprehended and arrested Sanabria nearby. He was carrying a black nylon bag with a striped polo shirt inside.

Sanabria was charged by indictment with one count each of Burglary in the Second Degree, Attempted Theft, Criminal Mischief and Resisting Arrest. At trial, the State did not present any fingerprint evidence because the fingerprints collected at the scene had been misplaced. Brackin, Garcia and Sargent all identified Sanabria as the man they had seen. Although nothing was missing from the home at 9 Alders Lane, the homeowner testified that a laptop computer and telephone in a first-floor office had been moved.

The jury found Sanabria guilty of Burglary in the Second Degree but not guilty of Attempted Theft. The State issued a *nolle prosequi* on the charges of Criminal Mischief and Resisting Arrest.

### Objectionable Testimony

Garcia testified that on July 20, 2007, he was near Prices Corner on Kirkwood Highway when he first received a call from the dispatcher. The prosecutor asked him, "And what information did you have when you were dispatched." Defense counsel objected on hearsay grounds. The prosecution responded that the question

---

1. Delaware Rule of Evidence 403 ("D.R.E.    403").

called for an answer that was "not offered for its truth or veracity[, but] simply ... to explain to me why he responded to 9 Alders Lane." The trial court overruled the objection. Garcia then testified: "When I was dispatched, I was advised that a neighbor of No. 7 Alders had seen a Hispanic male walking through her rear yard onto the neighbor's rear of the house, which would be No. 9 Alders Lane."

Garcia testified that while he was on his way from Kirkwood Highway to Alders Lane, he received a second dispatch "that the alarm at No. 9 Alders Lane was going off." Garcia explained:

> In other words, the alarm company called our dispatch, said, "We have an alarm going off in No. 9 Alders Lane." And I was already aware that [Brackin] who originally called the police said that she saw somebody walking to the rear of No. 9 Alders Lane.

Garcia testified that he parked his car and walked to the back of 9 Alders Lane. The reason Garcia went to the back of the home first "was because that's where the caller said she had seen the subject go." Because the door was locked and he thought the pry marks might be old, Garcia testified that he walked around to the front door, looking inside the windows on his way. Garcia testified that the front door was also locked.

The prosecutor then asked, "Where did you go at that point?" Garcia responded that he decided to check the back of the house one more time. The prosecutor asked, "At any point did you receive any information from dispatch?" Defense counsel objected, arguing that the question called for hearsay. The prosecutor argued that the he was not offering the statement for its truth but "to show what [Garcia] did and why he did it at the crime scene."

The trial court overruled the objection, stating, "I don't think it will be for the truth of the matter. You're allowed to say what you did at the crime scene."

Garcia testified that while checking the front door, he was advised by the dispatcher "that the alarm company called and said, 'We received motion from the foyer area.'" At that point, Garcia testified that he returned to the back of the house and found the back door open. Neither the dispatcher nor the alarm company operator testified at trial.

### Argument on Appeal

Sanabria argues that the trial court abused its discretion when it permitted Garcia to testify about the statements made to him by the dispatcher. In particular, Sanabria takes issue with the following: the dispatcher's statement that the alarm company had reported that the alarm was activated at 9 Alders Lane; and the dispatcher's statement that the alarm company had reported that the motion detectors sensed motion in the foyer. Sanabria contends that the admission of the out-of-court statements about the alarm "invited the jury to speculate that Sanabria was unlawfully inside 9 Alders Lane at the time the motion sensors were triggered."

Further, Sanabria asserts, the out-of-court statements that the alarm had been activated and detected motion in the foyer "were the only circumstantial evidence that placed Sanabria in the home." Accordingly, he claims that the admission of those statements, over defense counsel's objection and without a limiting instruction, constituted reversible error.[2] Alternatively, Sanabria contends that his right to confront the witnesses against him, under the Confrontation Clause of the United

---

2. *Dawson v. State*, 608 A.2d 1201, 1204, (Del. 1992).

States Constitution, was violated by admitting the out-of-court statements without a limiting instruction, because he had no opportunity to cross-examine either the dispatcher or the alarm company operator.[3]

### Background Information Problematic

∎ Background information may be necessary to give the jury a complete picture at trial and to ensure the jury is not confused in a way that would be unfavorable to the prosecution.[4] Background information "may fill in gaps in 'interwoven events' and thus help the jury understand the case in context."[5] Background information, however, can also be unfairly prejudicial to the defendant.

∎ Delaware Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[6] An out-of-court statement by a third-party that is not offered for its truth may be admissible under some circumstances if the purpose of admitting the statement is relevant to an issue at trial.[7] Even relevant evidence, however, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant.[8]

The prosecution often contends that the proffered out-of-court statement by a third party is not hearsay because is it not offered for the truth of its content but instead to provide relevant background information. Background information, however, even where not offered for the truth of the matter asserted, often involves two areas that are problematic. The first is where the third-party statement refers to other bad acts or crimes of the defendant, as this court held in *Johnson v. State.*[9] The second is where the content of the third-party statement relates to an element of the charged offense, as in Sanabria's case.

### "Information Received" is Preferable Alternative

∎ In this appeal, we consider the circumstances under which a third-party statement offered as background information may permissibly be admitted at trial. We recognize that comments by a third party that are not admitted for the truth of their content do not constitute hearsay statements. Nevertheless, when the prosecution seeks to admit a third party's out-of-court statement as background information and not for its truth, particularly where the statement relates to a prior bad act of the defendant or an element of the offense charged, the trial court must consider whether there is another way to provide that background information.

---

3. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

4. *See, e.g., Johnson v. State,* 587 A.2d 444 (Del.1991) *(en banc).*

5. *People v. Resek,* 3 N.Y.3d 385, 787 N.Y.S.2d 683, 821 N.E.2d 108, 109–110 (2004) (citing *People v. Till,* 87 N.Y.2d 835, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995)).

6. D.R.E. 801(c).

7. D.R.E. 401 (explaining that "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

8. D.R.E. 403 (providing that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

9. *Johnson v. State,* 587 A.2d 444 (Del.1991) *(en banc).*

In *People v. Resek,* the prosecutor sought to call police officers to testify that they arrested the defendant because they had received a report that the car he was driving was stolen, even though the defendant was being prosecuted not for stealing the car, but for unrelated drug offenses. The prosecutor argued that the evidence was necessary to prevent the jury from "speculat[ing] that the police simply accosted the defendant for no reason." [10] The New York Court of Appeals concluded that there were less prejudicial ways to deal with need for background information and that evidence of the uncharged crime was too prejudicial to be admitted. [11]

In *Johnson v. State,* this Court considered whether the trial court committed reversible error by admitting into evidence an unnamed police informant's out-of-court statement identifying the defendant as a participant in a drug transaction. [12] The trial court admitted the informant's out-of-court statement after ruling that it did not constitute hearsay because it was being offered only for the purpose of explaining "the ensuing activities of the police who arrested [the defendant]." [13]

In *Johnson,* we noted that "courts generally scrutinize out-of-court statements as to the availability of the speaker, the specificity of the information, the need of the statement in relation to other evidence, its relevancy to the question of guilt and the statement's prejudice to the defendant." [14] We also noted that several jurisdictions had imposed explicit limitations on the use of out-of-court statements offered by police to explain their actions. [15]

When the prosecution seeks to offer background information, the first question the trial court must consider is whether the jury could be provided the background information without referring to a third party's out-of-court statement. In considering whether the out-of-court identification of a crime suspect by an unnamed police informant is admissible, McCormick's treatise on evidence concludes that the testifying officer should simply explain that he acted "upon information received," rather than repeat the out-of-court statement by a third party detailing the contents of the background information:

> One area where abuse may be a particular problem involves statements by arresting or investigating officers regarding the reason for their presence at the scene of a crime. The officers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct. They should not, however, be allowed to relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay. Such statements are sometimes erroneously admitted under the argument that the officers are entitled to give the information upon which they acted. The need for this evidence is slight, and the likelihood of misuse great. Instead, a statement that an officer acted "upon information received," or words to that effect, should be suffi-

---

10. *People v. Resek,* 787 N.Y.S.2d 683, 821 N.E.2d at 109.

11. *People v. Resek,* 787 N.Y.S.2d 683, 821 N.E.2d at 110–11.

12. *Johnson v. State,* 587 A.2d 444 (Del.1991) *(en banc).*

13. *Johnson v. State,* 587 A.2d at 447.

14. *Johnson v. State,* 587 A.2d at 448 (citations omitted).

15. *Johnson v. State,* 587 A.2d at 449 (citing cases).

cient.[16]

In *Johnson v. State*,[17] we cited the above quoted section of McCormick's treatise with approval. We continue to find McCormick's analysis and rationale persuasive.

Accordingly, we hold that where the background can be provided as based "upon information received" neither the contents of a third party's out-of-court statement nor evidence of other bad acts should be presented to the jury. In this case, as in *Johnson*, Garcia could have just as easily testified that he went from the back of the house to the front and then to the back again "upon information received" from the dispatcher. There was no need for him to testify that the dispatcher told him that the alarm company reported motion at the house generally or in the foyer area specifically.

### No Alternative Requires Balancing

■ If the out-of-court statement is necessary to provide relevant background information, the second question the trial court must consider is whether the State's need for the background information outweighs the prejudice to the defendant. If the probative value of the third-party statement is substantially outweighed by the prejudice to the defendant, then the background information should not be provided to the jury. For example, in *Johnson v. State*, this Court considered whether the trial court committed reversible error when it admitted into evidence an unnamed police informant's out-of-court statement identifying the defendant as a participant in a drug transaction.[18]

In *Johnson*, we relied upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Palsa*.[19] In that case, the trial court committed reversible error when it admitted a named, but unavailable, informant's statements containing specific assertions of criminal conduct "because they tipped the balance too far toward prejudicing the defendant without a sufficient showing of need for their introduction by the prosecution."[20] In *Palsa*, a police officer was permitted to testify that he arrested a man who told him that he was on his way to the defendant's house to deliver marijuana and that he had sold the defendant marijuana the day before.[21] The trial court instructed the jury to consider the statements only for the purpose of explaining the police conduct in investigating the defendant. On appeal, the Pennsylvania Supreme Court applied the balancing test "between avoiding the dangers of hearsay testimony and the need for evidence that explains why police pursued a given course of action,"[22] and concluded that the jury would likely understand the out-of-court statements as proof of a necessary element of the crime.[23] The *Palsa* court further concluded that the police activities could easily have been explained

**16.** *United States v. Maher*, 454 F.3d 13, 20 (1st Cir.2006) (quoting 2 Broun, et al., *McCormick on Evidence* § 249, at 103 (5th ed.1999)).

**17.** *Johnson v. State*, 587 A.2d at 448.

**18.** *Johnson v. State*, 587 A.2d 444 (Del.1991) (en banc).

**19.** *Johnson v. State*, 587 A.2d at 449 (citing *Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808, 811 (1989)).

**20.** *Id.*

**21.** *Commonwealth v. Palsa*, 555 A.2d at 809, 811.

**22.** *Commonwealth v. Palsa*, 555 A.2d at 811.

**23.** *Johnson v. State*, 587 A.2d at 449 (citing *Commonwealth v. Palsa*, 555 A.2d at 811).

without using the out-of-court statements.[24]

In *Johnson*, we relied upon a decision by the United States Supreme Court that applied a balancing test similar to the Pennsylvania test to determine the permissible use of out-of-court statements to explain police conduct.[25] In *Moore v. United States*, the United States Supreme Court held that testimony by a police officer that an unidentified informant told him that the defendant had heroin in his apartment was inadmissible hearsay, because the trial court had relied expressly on the informant's statement to find the defendant guilty of possession of heroin.[26] In *Johnson*, the trial court admitted the informant's out-of-court statement after ruling that the statement did not constitute hearsay because it was offered only for the purpose of explaining "the ensuing activities of the police who arrested [the defendant]."[27]

This Court disagreed and adopted "a balancing test between the need for the circumstantial evidence and the danger of hearsay evidence being prejudicial to the defendant."[28] Relying on *Moore*, we explained that "[a]n out-of-court statement of an unidentified informant is inadmissible if it provides the single piece of information relevant to an element of a crime, even though it also explains why the police suspected the defendant in the first place."[29] In *Johnson*, this Court concluded that the unidentified informant's out-of-court statement was unfairly prejudicial and inadmissible under D.R.E. 403 because it was merely cumulative and was not importantly relevant to explain the police conduct.[30]

■ In this case, Sanabria was convicted of Burglary in the Second Degree. Under title 11, section 825 of the Delaware Code, burglary is entering into a dwelling with the intent to commit a crime therein.[31] There is no physical evidence that Sanabria entered the residence. The police officers recovered fingerprints from inside the home, but lost them before trial. Although there were pry marks on the door and the door was ajar, that does not establish that Sanabria actually entered the home. No property from inside the home was recovered from Sanabria.

The only evidence supporting the conclusion that Sanabria had entered the dwelling was the homeowner's testimony that items on his desk had been moved. It is unlikely that this testimony, standing alone, would be enough for a jury to con-

---

**24.** *Johnson v. State*, 587 A.2d at 449 (citing *Commonwealth v. Palsa*, 555 A.2d at 811).

**25.** *Johnson v. State*, 587 A.2d at 450; *Moore v. United States*, 429 U.S. 20, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976).

**26.** *Moore v. United States*, 429 U.S. 20, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976).

**27.** *Johnson v. State*, 587 A.2d at 447.

**28.** *Johnson v. State*, 587 A.2d at 449 (citing *Commonwealth v. Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985)).

**29.** *Johnson v. State*, 587 A.2d at 450.

**30.** *Johnson v. State*, 587 A.2d at 451 (citing D.R.E. 403 and explaining that there was little need for the informant's statement to explain why the police arrested the defendant when the State's primary witness was the undercover police officer who had participated in the drug transaction). In *Johnson*, we rejected the defendant's objection to the admission of the statement as a violation of his Sixth Amendment right to confront the witnesses against him. *Johnson v. State*, 587 A.2d at 451. In reaching that conclusion, however, it is important to note that this Court applied decisions of the United States Supreme Court prior *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**31.** Del.Code Ann. tit. 11, § 825.

clude beyond a reasonable doubt that Sanabria entered the home. On the other hand, informing the jury that the home's motion detector went off makes it far more likely that the jury would infer that Sanabria had unlawfully entered the residence.

As the United States Supreme Court explained in *Moore*, the out-of-court statement by the dispatcher that the alarm company reported motion at the residence generally and in the foyer specifically was inadmissible because it provided the primary evidence relevant to the "entering a dwelling" element of burglary. That the out-of-court statement also explained Garcia's conduct did not justify its admission at trial. The record reflects that the third party out-of-court statement's unfair prejudice to Sanabria outweighed its probative value as background information to the State. Therefore, if the D.R.E. 403 balancing had been done by the trial court in Sanabria's case, our holding in *Johnson* would have led to the conclusion that the State's need for background information was outweighed by the unfair prejudice of permitting the jury to hear Officer Garcia repeat third-party statements about an element of the charged offense.

### Admission Requires Limiting Instruction

■ Finally, we note for the benefit of future litigation that if the trial court concludes that the probative value of the background information is not substantially outweighed by its unfair prejudice to the

defendant and decides to admit a third-party statement into evidence, the admission of the background information *must* be accompanied by a limiting instruction to the jury. The jury must be contemporaneously advised that the third-party statement or other bad acts are not being admitted for the truth of their content but only to provide the jury with a background explanation for the actions taken by the police. Giving a limiting instruction "regarding the purpose for which the testimony is received further averts any prejudice to the defendant." [32]

Although the trial judge permitted the State to present the third-party statements based upon the State's representation that those statements were not presented for their truthfulness, that purpose was never explained to the jury with a limiting instruction. Therefore, the jury heard evidence that the security alarm was not only activated generally but also had been specifically activated within the foyer. Without the guidance afforded by a limiting instruction, the jury was left with the impression that the content of both statements was truthful.

### Abuse of Discretion

In this case, the State asserted that it needed the third-party out-of-court statements to explain Officer Garcia's conduct in responding to the dispatch. The trial judge never considered whether that background explanation could have been pro-

---

**32.** *Curry v. Burge*, 2004 WL 2601681, at *25 (S.D.N.Y. Nov.17, 2004) (citing *People v. Rivera*, 96 N.Y.2d 749, 725 N.Y.S.2d 264, 748 N.E.2d 1060, 1061 (2001) ("Any possible prejudice arising from this testimony was averted by the court's comprehensive limiting instructions ... admonishing the jury not to consider the officer's testimony for any purpose other than to explain why the officer acted as he did ... not to consider the testimony on the issue of defendant's guilt or innocence.")); *People*

*v. Resek*, 787 N.Y.S.2d 683, 821 N.E.2d at 109–110 (holding that in some circumstances, out-of-court statements offered to explain how and why the police pursued and confronted the defendant and not offered for their truth may be admitted in the court's discretion when coupled with a limiting instruction) (citing *People v. Tosca*, 98 N.Y.2d 660, 746 N.Y.S.2d 276, 773 N.E.2d 1014 (2002); *People v. Till*, 87 N.Y.2d 835, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995)).

vided by simply referencing that Officer Garcia was acting "on information received." [33] The record reflects preferable alternatives that should have been used in Sanabria's case.

The trial judge also never balanced the interest of the State in providing the content of the third-party statements as background information, against the unfair prejudice to the defendant.[34] The need for that balancing was particularly important here, because the out-of-court statements attributed to the alarm company by the dispatcher's last call to Officer Garcia established an element of the charged offense of burglary. If the trial judge had conducted a balancing analysis, that background information should have been excluded.

Most importantly, in this case, not only was the evidence admitted without considering any alternative—such as that the police acted upon information received— and without balancing the probative value to the State against the unfair prejudice to the defendant, but also, the background information was presented to the jury without a limiting instruction. Although the trial judge admitted the third-party statements because the State disclaimed any intent to use them for the truth of the matter asserted, the jury was never given an instruction to that effect. Consequently, the jury was free to use that evidence— in particular, the dispatcher's last call to Officer Garcia—for the truth of its content to establish an element of the burglary offense, i.e., entry into the foyer. The trial court therefore abused its discretion by admitting the third-party statements into evidence at Sanabria's trial.

### The Confrontation Clause

■ The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." [35] In Sanabria's case, the State did not call the dispatcher or alarm company operator to testify at trial. Neither declarant was determined to be unavailable and Sanabria did not have an opportunity to cross-examine either one of them.

In *Crawford v. Washington*, the United States Supreme Court held that in a criminal trial, the admission of hearsay evidence (i.e., an out-of-court statement offered to prove the truth of the matter asserted and not offered for some other permissible purpose) implicates the Confrontation Clause because the defendant does not have an opportunity to confront the out-of-court declarant.[36] The Supreme Court explained that where the declarant does not testify at trial, and either the declarant is not unavailable or the defendant did not have a prior opportunity to cross-examine the declarant, (1) the admission of testimonial statements violates the Confrontation Clause, and (2) the admission of nontestimonial statements does not implicate the Confrontation Clause and instead is governed by the jurisdiction's evidence rules.[37]

Following *Crawford*, several federal courts have considered whether the admission of third party out-of-court statements offered to explain police conduct violates the Confrontation Clause. In *United*

**33.** *Johnson v. State*, 587 A.2d 444 (Del.1991) (en banc). *McCormick on Evidence* § 249, at 103 (5th ed.1999).

**34.** D.R.E. 403.

**35.** U.S. Const. amend. VI.

**36.** *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**37.** *Crawford v. Washington*, 541 U.S. at 68, 124 S.Ct. 1354.

*States v. Maher,* the United States Court of Appeals for the First Circuit considered whether the defendant's Sixth Amendment right to confront the witnesses against him was violated under *Crawford* when the prosecution admitted into evidence, through the testimony of police officers, an informant's out-of-court testimonial statements that he had bought his cocaine from the defendant and that the defendant was a significant drug trafficker.[38]

The *Maher* court noted that, post-*Crawford,* the issue of whether an out-of-court statement is admissible for reasons other than its truth has not been addressed very often.[39] The *Maher* court explained that it was preferable to tell the jury that the police were acting based upon information received and cited the same quote from McCormick's treatise on evidence that this Court relied upon in *Johnson.*[40] The court then considered whether a third party's out-of-court statements were admissible for reasons other than the truth of the assertion that the defendant sold drugs to that third party.[41]

In *Maher,* the government argued that the statements were admissible to set the context for the police officers' conduct and not for their truth.[42] The court explained that, "[s]ometimes the rationale that an out-of-court statement provides context for other admissible evidence will be valid,"[43] but in this case, "[t]he government's articulated justification—that any statement by an informant to police which sets context for the police investigation is not offered for the truth of the statement and thus not within *Crawford*—is impossibly overbroad."[44] The *Maher* court added that the justification was overbroad even under the classic articulation of hearsay in the McCormick treatise.[45] "What gives this situation added bite is that the 'context' rationale may be used by the prosecution not just to get around hearsay law, but to circumvent *Crawford's* constitutional rule."[46] The *Maher* court also noted that in *United States v. Silva,* the Seventh Circuit had warned that: "[u]nder the prosecution's theory, every time a person says to the police 'X committed the crime,' the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers."[47]

In *United States v. Silva,* a DEA agent testified that he listened to conversations between a non-testifying confidential informant and a drug supplier and heard the informant speak of "this individual named

**38.** *United States v. Maher,* 454 F.3d 13 (1st Cir.2006).

**39.** *United States v. Maher,* 454 F.3d at 20.

**40.** *United States v. Maher,* 454 F.3d at 20 (quoting 2 Broun, et al., *McCormick on Evidence* § 249, at 103 (5th ed.1999)).

**41.** *United States v. Maher,* 454 F.3d at 22.

**42.** *United States v. Maher,* 454 F.3d at 22.

**43.** *United States v. Maher,* 454 F.3d at 22 (citing *United States v. Walter,* 434 F.3d 30, 33–34 (1st Cir.2006) (holding that an informant's out-of-court statement was admissible and did not offend *Crawford* when offered in the form of a tape-recording made during a sting operation during which the informant bought weapons from the defendant and explaining that statements by the non-testifying informant in certain portions of the tapes were admissible to provide context for the defendant's admissions on the tape)).

**44.** *United States v. Maher,* 454 F.3d at 22.

**45.** *United States v. Maher,* 454 F.3d at 22.

**46.** *United States v. Maher,* 454 F.3d at 22.

**47.** *United States v. Maher,* 454 F.3d at 22 (quoting *United States v. Silva,* 380 F.3d 1018, 1020 (7th Cir.2004)).

Juan [who] indicated that he was going to be making the delivery."[48] The defendant's name was Juan. The government argued that the testimony was admissible to show "the actions taken by [each] witness." The United States Court of Appeals for the Seventh Circuit disagreed,[49] explaining that "[a]llowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the Sixth Amendment and the hearsay rule."[50]

In *Maher*, the court concluded that the third party's out-of-court statements appear to have been "primarily given exactly for the truth of the assertion that [the defendant] was a drug dealer."[51] Officer MacVane testified that the third-party informant said the defendant was a drug dealer when the prosecution could have easily structured its narrative to avoid that testimony.[52] The *Maher* court explained that, consistent with the McCormick treatise's recommendation, the officer "could merely have said that he 'acted upon information received, or words to that effect,' "[53] and concluded:

> The dividing line often will not be clear between what is true background to explain police conduct (and thus an exception to the hearsay rule and thus an exception to *Crawford*) and what is an attempt to evade *Crawford* and the normal restrictions on hearsay. But we are on firm ground in warning prosecutors of the risks they face in backdoor attempts to get statements by non-testifying confidential informants before a jury.[54]

**48.** *United States v. Silva*, 380 F.3d at 1019.

**49.** *United States v. Silva*, 380 F.3d at 1020.

**50.** *United States v. Silva*, 380 F.3d at 1020.

**51.** *United States v. Maher*, 454 F.3d at 23. *But see United States v. Cruz–Diaz*, 550 F.3d 169, 175–77 (1st Cir.2008) (explaining that in bank robbery case where admission of officer's testimony about out-of-court statement by defendant's co-defendant that "the money is over there is a black bag, we already threw away the weapons" and "we're screwed, less than five minutes and they caught us" did not violate *Crawford* because the statements were not offered for their truth—that is, to prove the money was in the bag or that they were "screwed"—but to explain why the FBI and police did not pursue other investigatory options after they apprehended the defendants) (citing *United States v. Bailey*, 270 F.3d 83, 87 (1st Cir.2001) (noting that a statement "offered to show the effect of the words spoken on the listened (e.g., to supply a motive for the listener's action)" is not hearsay); 4 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 801.02[1][f] (9th ed. 2006) ("If a statement is offered for its effect on the listener, in order to explain the listener's conduct, it does not matter whether the declarant is telling the truth.")).

The court in *Cruz–Diaz* also noted that the court gave two limiting instructions to the jury explaining that the jury could only consider the co-defendant's statement for the limited purpose of providing a context for the decision not to send the fingerprint evidence to the lab for processing and not for the truth of the matter asserted in the statement. *United States v. Cruz–Diaz*, 550 F.3d at 177. Further, the government's justification for offering the declarant's statement was not pretextual because the government did not offer the statement in its case-in-chief but only in its rebuttal after defense counsel asked an FBI agent on cross-examination why he did not pursue certain investigatory opportunities. *Id.* at 177–78.

**52.** *United States v. Maher*, 454 F.3d at 23.

**53.** *United States v. Maher*, 454 F.3d at 23 (quoting 2 Broun, et al., *McCormick on Evidence* § 249, at 103 (5th ed.1999)).

**54.** *United States v. Maher*, 454 F.3d at 23. Because the defendant in *Maher* did not object to the admission of the testimony and the court *sua sponte* gave a limiting instruction immediately following the testimony, the court found no plain error. *Id.* In addition, there was independent evidence that the de-

At Sanabria's trial, the out-of-court statements by the alarm company to the dispatcher, admitted through the testimony of Officer Garcia, was offered to explain how the police responded the way they did. We have determined, as did the court in *Maher*, the out-of-court statements at issue in Sanabria's case were not admissible. To paraphrase the McCormick treatise, an officer cannot relate historical aspects of the case, such as reports by others that contain inadmissible hearsay, by arguing that they are necessary to explain the information upon which the officers acted.

In *Maher*, the defendant failed to object to the admission of the out-of-court statements by the informant that the defendant was a drug dealer but the court gave a limiting instruction *sua sponte*. In addition, there was independent evidence that the defendant possessed cocaine based on the drugs found in the van. Here, in contrast, defense counsel objected to the admission of the out-of-court statement by the dispatcher that the alarm company reported that the foyer motion detector had been activated, but the court overruled the objection, concluding, "You're allowed to say what you did at the crime scene," and admitted the evidence without giving a limiting instruction. Absent a limiting instruction, the statement by the dispatcher that the alarm company reported motion in the foyer could have been considered by the jury for the truth of the assertion that Sanabria was inside the house. To paraphrase *Silva*, we hold that to permit Officer Garcia to narrate the course of his investigation and "spread before [the jury] damning information that is not subject to cross-examination" abrogates both the rule against hearsay and Sanabria's Sixth

Amendment right under the Confrontation Clause.

### Error Not Harmless

■ The State argues that, as in *Johnson*, even if the third party out-of-court statements were inadmissible, the error was harmless. In *Johnson*, a police officer testified that a confidential informant had identified the defendant and his co-conspirators.[55] We concluded that this out-of-court statement was inadmissible hearsay, but declined to reverse the conviction, because "[w]hile the statement was highly incriminating to the defendant, it is merely cumulative in the State's case against him, and it did not have important relevance as an explanation for police conduct."[56] Sanabria's case is distinguishable from *Johnson*, because the dispatcher's out-of-court statements were not merely cumulative evidence. They likely were a principal factor in Sanabria's conviction.

Here, there was almost no independent evidence that Sanabria had entered the house and set off the motion detectors in the foyer. The homeowner gave some testimony touching on this information. The prosecutor asked him whether "there c[ame] a time when [he] realized or found out that [his] home had been burglarized?" The homeowner answered, "Yes. We were called by the security company," but the homeowner did not testify as to what the security company told him or that the security company had reported motion in the foyer. He did testify that the back door of his home had been pried open and that a phone and laptop computer in the first-floor office had been moved from its usual place. He further testified that the phone had been unplugged and the cord was wrapped around it.

fendant possessed cocaine because of the drugs found in his van during the search incident to his arrest. *Id.*

**55.** *Johnson*, 587 A.2d at 451.

**56.** *Id.*

In Sanabria's case, the statement that there was motion detected in the foyer did bear on a factual issue before the jury for resolution—whether the defendant had entered the dwelling. No other evidence at trial established that Sanabria had entered the house. Therefore, the record does not support a conclusion that the admission of the out-of-court statement by the dispatcher that the alarm company reported motion in the foyer was harmless beyond a reasonable doubt.

### Conclusion

The Superior Court's judgment is reversed. This matter is remanded for further proceedings in accordance with this opinion.