SUPERIOR COURT
of the
STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)739-5333

December 3, 2015

Bartholomew J. Dalton, Esq.
Andrew C. Dalton, Esq.
Dalton & Associates PA
1106 West 10th Street
Wilmington, DE 19806

John D. Balaguer, Esq.
Lindsey E. Anderson, Esq.
White & Williams LLP
824 N. Market Street, Ste. 902
Wilmington, DE 19899

RE: *Estate of Robert R. Rochester, Jr. v. Reyes, M.D., et al.*
**N13C-07-371 JAP**

Dear Counsel:

Plaintiffs move *in limine* to admit out-of-court statements allegedly made by Christiana Care Health System agents instructing the decedent to stop his coumadin regimen. Defendants object to the admission of these statements arguing they are hearsay. Plaintiffs argue that the statements are nonhearsay because they are offered to prove their effect on the listener and are not offered for the truth of the matter asserted. Plaintiffs also move to exclude Defendants' chart offered to show the decedent's five-year historical INR levels. Plaintiffs argue that the data, and accordingly the chart summarizing the data, are irrelevant and also inadmissible pursuant to Delaware Rule of Evidence 403.

The parties submitted letter memoranda to the Court and then argued the issues on December 2, 2015. For the reasons below, the Court grants, in part, Plaintiffs' motion to admit Christiana Care agents' alleged statements because they are nonhearsay. The Court denies the Plaintiffs' motion to exclude the decedent Plaintiff's historical INR chart because (1) it is relevant and; (2) it is not inadmissible pursuant to DRE 403.

## Background

This is a medical malpractice case where the Plaintiffs allege that Defendants, Dr. Reyes and Delaware Medical Group, were negligent in treating Plaintiff Robert Rochester ("decedent"). More specifically, Plaintiffs allege that Dr. Reyes failed to appropriately treat decedent's hyercoagulation condition which in turn caused his death.

On October 12, 2012, the decedent went to the emergency room at Christiana Hospital because of a dog bite he suffered while delivering mail. For at least several years before the emergency room visit, the decedent took the blood thinner coumadin due to a pulmonary embolsim in 2007. Plaintiffs proffer that two separate healthcare professionals at Christiana instructed the decedent to stop taking his prescribed coumadin until a followup appointment with his primary care provider, Dr. Reyes.

The decedent visited Dr. Reyes four days after his emergency room visit. Dr. Reyes claims that the decedent told him at this visit that he was still taking his coumadin. The decedent died of a pulmonary embolism approximately eighteen hours after leaving Defendants' office.

Christiana Health Services is no longer a party except for purposes of possible apportionment of liability purposes, pursuant to a settlement including a joint tortfeasor release. The two Christiana Health Services declarants that made the statements at issue have not been identified.

Finally, critical to the second issue in Plaintiff's motion are the historical INR levels of decedent. These levels record the levels of coumadin in a patient's blood to ensure they stay at a level sufficient to achieve the required purpose. During decedent's treatment after the pulmonary embolism in 2007, he regularly received blood tests recording these levels. During this greater than five year period, many of the INR results were lower than the therapeutic threshold.

**Statements made by Christiana Care employees to discontinue coumadin are admissible as nonhearsay provided**
**Robert Rochester was present when they were made.**

The statements allegedly made by Christiana Care's agents to the decedent are admissible nonhearsay. The threshold issue in hearsay analysis always starts with asking what is the evidence offered to prove. This necessarily gives some flexibility to the proponent as evidence often can have more than one purpose. The Plaintiffs offer this evidence to show its effect on the listener – the decedent. Namely, the evidence is offered to prove that decedent likely stopped taking his coumadin in response to the statements.

As presented to the Court at this juncture, the challenged out-of-court statements fall in three categories. First, there are proferred statements made to the decedent telling him to stop taking his coumadin with relatives present. Second, there is the exchange between decedent's son and decedent confirming that decedent was told to stop taking his coumadin. Third, there is at least one statement Plaintiff may seek to offer involving an exchange between decedent's son Christopher and decedent's brother confirming the statements made by agents of Christiana Care.

The Defendants argue that all three are offered to prove the truth of the matter asserted. Defendants frame the analysis by arguing that the matter asserted is that the decedent was in fact taking his coumadin between the hospital visit and the followup primary care visit. Furthermore, citing *Atkins v. State*[1] and *Sanabria v. State*[2], the Defendants submit that effect on the listener nonhearsay requires that there be some independent evidence that the decedent stopped taking his medication as a prerequisite to admit nonhearsay in this category.

The Delaware Supreme Court, as the Federal courts, recognize this category of nonhearsay.[3] Furthermore, the key Delaware Supreme Court decision cited by

---

[1] *Atkins v. State*, 523 A.2d 539 (Del. 1987).

[2] *Sanabria v. State*, 974 A.2d 107 (Del. 2009).

[3] *Atkins*, 523 A.2d at 547.

both parties, *Atkins v. State*, does not require independent corroborating evidence as a prerequisite to admission of nonhearsay.[4]

Defendants also rely on *Sanabria v. State*, arguing that it requires that admitting such a statement is conditioned on the availability of other admissible evidence that the listener acted in accordance with the instructions. *Sanabria*, however, was decided in the criminal law context where the Confrontation Clause was a key concern. There, the State attempted to admit a dispatcher's statement which was the only evidence that a burglar was physically in a home.[5] The non-testifying dispatcher's statement about an essential element of a crime violated the Confrontation Clause of the Sixth Amendment.[6]

The Confrontation Clause, of course, does not apply in this civil context. Furthermore, the statements in *Sanabria* regarding "independent evidence that the defendant possessed cocaine" were included in the Delaware Supreme Court's analysis of sufficiency of the evidence for purposes of determining whether the Confrontation Clause violation was harmless.[7] Lastly, even in the criminal law context, *Sanabria* noted that such testimony could be properly admitted if the trial court issues a limiting instruction after conducting a DRE 403 balancing test.[8] Accordingly, the reasoning in *Sanabria* does not support Defendant's position in this case. Given an absence of any direct authority submitted by the Defendants, the Court does not find that independent evidence of action taken by the listener is a prerequisite to admission of nonhearsay in this category.[9]

---

[4] *Id.*

[5] *Id*. at 121.

[6] *Id*. at 120.

[7] *Id*. at 121.

[8] *Id*. at 116.

[9] Plaintiff also submits that a pill count from decedent's pill bottle evidences that he stopped taking coumadin. Such evidence, if admitted, would constitute some independent evidence regarding decedent's coumadin regimen during the intervening days at issue.

Defendants argue that the statements at issue could also tend to prove the truth of the matter asserted. They are correct. However, nonhearsay statements involving effect on the listener "frequently have an impermissible hearsay aspect as well as the permissible nonhearsay aspect."[10] If the evidence is not barred pursuant to DRE 403, such evidence is properly admitted, subject to an appropriate limiting instruction.[11] As noted in a well-recognized federal evidence and practice treatise, the general evidentiary rule is that instructions to an individual to do something are not hearsay.[12] Here, the instructions to the decedent to stop taking his coumadin are not hearsay.

Before admitting the evidence, the Court is required to perform a DRE 403 balancing test. Statements made to the decedent by health care professionals that he should stop taking his coumadin are probative circumstantial evidence that he took that action. The risk of unfair prejudice cannot be said to substantially outweigh the probative value of this evidence. The Court, however, will issue a limiting instruction at an appropriate time during the course of the trial to emphasize its limited purpose to the jury.

To the extent that any Christiana Care agent's out-of-court statements were made to the decedent's relatives outside the presence of the decedent, they will be barred pursuant to DRE 403. The relevance as to such statements effect on Christopher or Ronald Rochester is minimal at best. In fact, the Court does not appreciate any relevance of actions taken by them as a result of instructions given to the decedent regarding his medication. Moreover, the substantial risk of confusing the issues and unfairly prejudicing the Defendants would substantially outweigh any probative value of such evidence If the decedent was present during such statements, they are admissible for the limited purpose offered. If the decedent was not, they are not admissible.

Finally, the statements identified by Defendants between Christopher Rochester and his father will similarly be admitted. Defendant's argues that these statements

---

[10] *McCormick on Evidence* § 249 (3rd ed).

[11] *Id.*

[12] 30B *Federal Practice and Procedure* "Definition of Hearsay" § 7005, at 73-76 (2011).

involve multiple levels of hearsay. At each level analyzed, the statements in this exchange are nonhearsay. They are offered to prove circumstantial evidence of the statements effect on the listener – that he was not taking his coumadin during that period.

## The Defendant's chart summarizing Decedent's Prior INR levels is admissible

Defendants offer into evidence a chart summarizing decedent's prior INR levels to show (1) that decedent's INR values regularly fluctuated in and out of the therapeutic range for greater than five years before his death; (2) that he did not experience a pulmonary embolism during the periods his INR was as low or nearly as low as alleged in the instant case; (3) that when decedent's levels were low, Dr. Reyes' practice was to re-test the INR levels and adjust decedent's dosage; and (4) at the times decedent's levels were as low as the levels involved in this incident, the decedent was not hospitalized.

Plaintiffs oppose its admission based on relevancy. Namely, Plaintiffs emphasize that both Defendants' experts testified in their depositions that the INR reading immediately preceding decedent's office visit with Dr. Reyes was irrelevant to whether Dr. Reyes breached the standard of care. Both Defendant's proffered experts, Dr. Skolnick and Dr. Fogarty, testified in depositions that a reasonable doctor would not be influenced by the immediately preceding INR result. Thus, Plantiffs argue that five years of prior results are likewise irrelevant. Plaintiff's argument in this regard goes to the weight the jury should place on the data. If Dr. Reyes' testimony will be as proffered, the chart will be relevant.

Plaintiffs also object to this evidence based on DRE 403, arguing somewhat narrowly that the probative value of any such evidence is substantially outweighed by the danger of confusing the issues and by needless presentation of cumulative evidence. Here, the data in the chart is confined to the period Dr. Reyes provided treatment to the decedent for the condition Plaintiffs allege caused Mr. Rochester's death. Such evidence is probative and the Plaintiffs' arguments do not convince the Court that DRE403 considerations substantially outweigh the data's relevance. Accordingly, the chart will be admitted for at least some of the purposes proffered by Defendants. Testimony and argument regarding some of the itemized reasons

proffered by the Defendants may be limited, however, by expert disclosures, discovery responses, and the requirements for expert opinion evidence.

       **IT IS SO ORDERED**.


                            /s/ Jeffrey J Clark

JJC/dsc
*Via File & ServeXpress*
oc:    Prothonotary