IN THE SUPREME COURT OF THE STATE OF DELAWARE

GARY MATTA, §
§
Defendant Below, § No. 514, 2024
Appellant, §
§ Court Below: Superior Court
v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 2303016736 (N)
§
Appellee. §

Submitted: March 11, 2026
Decided: April 29, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

## **ORDER**

The Court, having considered the briefs and the record below, and after oral argument, rules as follows:

(1) A Superior Court jury found Gary Matta guilty of five counts of first-degree unlawful sexual intercourse and one count of second-degree unlawful sexual contact. The court sentenced him to an aggregate of 85 years of unsuspended incarceration. On appeal, Matta argues that the Superior Court erred by allowing the complaining witness to testify that Matta was "kicked out" of the Boy Scouts, and that his family members knew that Matta was abusing him. We hold that admitting the Boy Scout testimony was harmless error and that the court did not plainly err by

admitting testimony about the family members' knowledge of Matta's abuse. Thus, we affirm his convictions.

(2)    The evidence at trial showed that, in the spring of 1988, when D.M. was eleven years old, he joined the Boy Scouts and met Matta, a Scoutmaster.[1] Matta took an interest in D.M. That summer, D.M. began accompanying his cousin J.P. to sleepovers at Matta's apartment in Newark, Delaware.[2] According to the State, Matta sexually abused D.M. during these visits with increasing frequency.[3] Even so, from ages eleven to sixteen, to escape his chaotic and abusive home life, D.M. spent most school-year weekends and summer weeks staying with Matta.[4] When D.M. turned sixteen, Matta became D.M.'s legal guardian. D.M. moved into Matta's apartment and began attending school in Newark.[5] D.M. lived on-and-off with Matta throughout his twenties.[6] D.M. left for good in the early 2010s, when he was about thirty-two years old.[7]

---

[1] App. to Opening Br. at A146–48 [hereinafter A_].

[2] A148–53.

[3] A162–64.

[4] A140, A166, A168, A175.

[5] A169–70.

[6] A176.

[7] A248–50, A254.

(3)     In 2014 or 2015, D.M. told a friend that Matta had sexually abused him when he was younger.[8]  The friend contacted the Boy Scouts.  In 2020, the Scouts informed Newark Police Detective Greg Micolucci of D.M.'s allegations.[9]  Initially, D.M. did not cooperate, but in 2022, he contacted Detective Micolucci, who reopened the investigation.[10]  The police eventually charged Matta with five counts of first-degree unlawful sexual intercourse and one count of second-degree unlawful sexual contact.[11]  At the end of a three-day jury trial in March 2024, the jury convicted Matta of all charges.

(4)     Matta argues on appeal that two areas of evidence should have been excluded at trial.  First, the State asked D.M. how long he participated in the Scouts, to which D.M. responded:

> Two, three years I think I went to the Scouts before [Matta] was kicked out.  Or at least that's what I heard, he was kicked out.  I don't know the specifics of that, so I want to be clear about that.  Just I heard that he was kicked out.  I knew he was out of the Scouts.[12]

At sidebar, Matta's counsel moved "to strike that testimony as prejudicial" because his "being kicked out of Scouts was political.  It had nothing to do with molesting

---

[8] A183–84, A196, A262.

[9] A184, A322, A340.

[10] A332–35.

[11] A519–21.

[12] A150.

minors."[13] The court overruled the objection because "[t]he testimony wasn't for the truth of the matter asserted."[14] And, the court observed, D.M. testified that "he doesn't know why [Matta] was kicked out."[15] Matta's counsel did not ask for a limiting instruction. But the court allowed Matta's counsel to ask D.M. on cross-examination whether he knew Matta was expelled for "call[ing] one of the other Scouts master's kids a crybaby . . . ."[16] D.M. responded he had not known that.[17]

(5) The second claim of error relates to D.M.'s recollection of his uncle's and grandmother's comments about his relationship with Matta. To explain why D.M. never reported the abuse, the State asked D.M. whether he was "ever given the impression that people in [his] family knew something was going on with [Matta]?"[18] Matta's counsel lodged a hearsay objection. At sidebar, the State told the court it wanted to show "why [D.M.] felt like he didn't have anyone else he could

---

[13] A150–51.

[14] A151.

[15] *Id.*

[16] A210–12.

[17] A212. Matta's expulsion came up two other times, but his appeal focuses almost exclusively on D.M.'s comments. Opening Br. 16–28 & n.37 (discussing D.M.'s comments, and only in a footnote saying "[m]ore fuel was thrown on this fire when the jury was told that D.M. had asked [Detective Micolucci] to find out why Matta had been forced out." (citing A378)). But that testimony in fact noted that statement was *not* sufficiently incriminating to create probable cause, and was given only in response to arguments Matta raised. A087; A378–79.

[18] A171.

4

go to and everyone in the family knew what was happening to him and tolerating it."[19] The court accepted the argument, stating that "it's to the witness's mindset, so I'm going to overrule the objection."[20]

(6)  Over Matta's counsel's renewed objections, D.M. testified that his uncle mocked him by saying, in essence, that D.M. enjoyed his sexual relationship with Matta, and that his grandmother referred to Matta as D.M.'s "daddy."[21] D.M. testified that these comments made him "realize[] that they all thought something was wrong with the situation, but they were taking it out on me."[22]

(7)  Matta has appealed the two evidentiary issues. "We review evidentiary rulings to decide whether the Superior Court exceeded its discretion."[23] Furthermore, "[w]hen a defendant fails to make a timely objection to the evidence, [ ] we review only for plain error."[24]

---

[19] A171–72.

[20] A174.

[21] A174–75.

[22] *Id.*

[23] *Newton v. State*, 295 A.3d 135, 2023 WL 2617335, at *2 (Del. Mar. 23, 2023) (TABLE).

[24] *Jones v. State*, 940 A.2d 1, 10 (Del. 2007); *see also Suber v. State*, --- A.3d ---, 2026 WL 184867, at *6 (Del. Jan. 15, 2026) (a party "must show that (1) the record is adequate to review his claim, (2) an error occurred, (3) the error is plain, and (4) the error adversely affected his substantial rights by jeopardizing the fairness and integrity of the trial process" such that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." (citation omitted)).

(8)     Matta argues that D.M.'s testimony about Matta's expulsion from the Boy Scouts should have been excluded under Delaware Rules of Evidence 403 and 404(b).[25]  Rule 403 excludes evidence that is substantially more prejudicial than probative.[26]  Rule 404(b) excludes evidence of crimes or uncharged conduct offered to establish propensity to commit a crime.[27]  The parties agree that Matta preserved a Rule 403 objection, but the State says we should review the Rule 404(b) argument for plain error.

(9)     The objections at trial fairly presented the issue under both Rules. Matta's counsel objected because the jury did not know the expulsion "had nothing to do with molesting minors."[28]  Matta argued that "the jury could speculate" the expulsion was evidence of some "other act" of sexual abuse and that Matta "acted in accordance" with that trait by abusing D.M.[29]

---

[25] Opening Br. 16.

[26] D.R.E. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

[27] D.R.E. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . [but] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

[28] A151.

[29] *Id.* (first quote); D.R.E. 404(b) (second and third quotes).

(10)   Ordinarily, the next step in our analysis would be to assess whether the court exceeded its discretion by admitting the evidence under either Rule 403 or 404(b).[30]   Here, however, the State concedes that the court erred by admitting the evidence as non-hearsay instead of conducting a Rule 403 balancing test.[31]   We therefore move to whether the error was harmless.   For erroneously admitted evidence that "does not implicate constitutional rights, '[t]he well-established rule is that where the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction, error in admitting the evidence is harmless.'"[32]

(11)   The evidence properly admitted was sufficient to sustain the convictions.   First, we note that the error in admitting the evidence was tempered by the fact that the court allowed defense counsel to ask a leading question suggesting that Matta had been expelled because he insulted another Scoutmaster's child.[33]

---

[30] *Newton*, 2023 WL 2617335, at *2 ("We review evidentiary rulings to decide whether the Superior Court exceeded its discretion.").

[31] At oral argument, the Court asked if "it was an error for the [trial] court to address the objection as a hearsay objection and not consider it under 403?"  The State responded "Yes, Your Honor." Delaware Supreme Court Oral Argument 25:56–26:17.

[32] *Keys v. State*, --- A.3d ---, 2025 WL 3522530, at *10 (Del. Dec. 9, 2025) (quoting *Taylor v. State*, 260 A.3d 602, 618 (Del. 2021))*; see also Greene v. State*, 966 A.2d 824, 282 (Del. 2009) (even though self-incriminating statements were erroneously admitted, because "a rational jury could [have] credit[ed]" other "testimony, standing alone" to find the defendant guilty, the error was harmless).  The *Greene* Court reached this holding under a *constitutional* harmless error analysis, which requires the State to satisfy the more burdensome standard showing harmlessness beyond a reasonable doubt.  *Id.*

[33] *See Prosecution Summations,* 6 AM. JUR. TRIALS 873 (noting several cases in which the "prejudice resulting from [improper prosecutorial] comments was ameliorated").

(12)   Second, other witnesses corroborated key portions of D.M.'s testimony. D.M. explained that Matta had substantial opportunity to commit the abuse, because other adults were not present when D.M. slept over, and D.M.'s cousin, J.P., slept in a separate room.[34]  J.P. confirmed these details.  He testified that during all the times he and D.M. slept over, he never saw D.M. "sleep anywhere other than in the bedroom with Mr. Matta[.]"[35]  He also confirmed that he was never "in the bedroom where [D.M.] was sleeping with Gary Matta[.]"[36]

(13)   Third, although no witness could corroborate D.M.'s accusations of abuse, D.M. vividly testified about these incidents.  D.M. testified in detail about individual instances of abuse, including the first time that the abuse occurred, as well as specific recollections of moments within those instances and his feelings about the abuse at that time.[37]  His testimony exceeded 120 transcript pages.[38]

(14)   Finally, D.M. also testified about why he continued to return to Matta's apartment despite the molestation – to escape the physical violence and chaos of his

---

[34] A157–58.

[35] A283–84.

[36] A293.

[37] *E.g.*, A165.

[38] *See* A138–264.

own home.[39]  J.P. corroborated D.M.'s family circumstances, including D.M.'s father's drinking and the general chaotic atmosphere of his home life.[40]  Finally, D.M. explained how he became estranged with his family over time.  He testified that his relationship with Matta continued when he got older because Matta's apartment was the only place available to him.[41]  Another witness who knew D.M., J.P., and Matta testified that D.M.'s family did not help him move out of Matta's apartment as an adult.[42]  In sum, D.M.'s testimony of sexual abuse, and the other witnesses' corroboration of the circumstantial evidence of the opportunity for abuse, was sufficient evidence standing alone to support the convictions.

(15)  The second issue on appeal is D.M.'s testimony about his family members' comments related to Matta's sexual abuse.  Matta's trial counsel objected to the testimony as hearsay.  On appeal, however, Matta has changed course and argues that the testimony should have been excluded or accompanied by a limiting instruction under *Sanabria v. State*.[43]  Matta also argues that *Sanabria* requires us to review for abuse of discretion.

---

[39] A166–67.

[40] A272–75.

[41] A180–81.

[42] A305–07.

[43] 974 A.2d 107 (Del. 2009).  *Compare* Opening Br. 30 (citing "D.R.E. 403" and "limiting instructions"), *with* A171–73 (objecting at trial for hearsay and because the statements went "to

(16) Matta did not raise the issue below. Therefore, we review for plain error, not for abuse of discretion.[44] "Plain errors are 'material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.'"[45]

(17) In *Sanabria*, we held that when a party offers witness testimony that relays background information and relates to an element of a charged offense, the trial court must consider less prejudicial alternatives before admitting the information.[46] If there are none, the court must conduct a Rule 403 balancing test.[47] And we held that, "for the benefit of future litigation," the testimony, if admitted, "*must* be accompanied by a limiting instruction to the jury."[48] In *Sanabria*, we concluded that the trial court exceeded its discretion because it did not conduct a balancing test.[49]

---

the truth of the matter asserted."). By not raising the hearsay argument on appeal, Matta waived that issue.

[44] *Russell v. State*, 5 A.3d 622, 627 (2010) (Rule 8's "prohibition applies to both specific objections as well as the arguments that support those objections.").

[45] *Suber*, 2026 WL 184867, at *5.

[46] *Sanabria*, 974 A.2d at 112–17.

[47] *Id.* at 115–16.

[48] *Id.* at 116 (emphasis in original).

[49] *Id.* at 117.

10

(18) The facts here are distinguishable. The remarks in *Sanabria* were the "principal factor" for conviction, as "there was almost no independent evidence" of the element of the crime established by the testimony.[50] By contrast, in this case, the testimony was offered for a more limited purpose – to explain why D.M. waited to report the abuse.[51] It was also clear that his family members were only speculating.[52] Although this sort of testimony "*must* be accompanied by a limiting instruction to the jury,"[53] the failure to give one was not plain error. As discussed earlier, the State's case rested on D.M.'s testimony accusing Matta of abuse. And testimony about his family's remarks was inconsequential when compared to D.M.'s testimony about abuse. Because the jury needed to accept D.M.'s testimony as true to find Matta guilty, and they did so, there is no "reasonable probability that, but for the error, the outcome of the proceeding would have been different."[54]

---

[50] *Id.* at 120.

[51] A172.

[52] A175 (D.M. remarking his family "thought something was wrong with the situation").

[53] *Sanabria*, 974 A.2d at 117.

[54] *Suber*, 2026 WL 184867, at *6 (quoting *Greer v. United States*, 593 U.S. 503, 507–08 (2021)).

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice