IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRANDON WILLIAMS, | § | |
| | § | No. 523, 2013 |
| Defendant Below- | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1210009895 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |
| | § | |

Submitted:  May 28, 2014
Decided:  July 25, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED**.


Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware for Appellant.

Maria T. Knoll, Esquire, State of Delaware Department of Justice, Wilmington, Delaware, for Appellee.

**RIDGELY**, Justice:

Defendant-Below/Appellant Brandon Williams appeals from a judgment of convictions in the Superior Court of Burglary Second Degree, Unlawful Use of a Credit Card, Misdemeanor Theft, and Resisting Arrest. The State alleged that Williams entered the home of Jeffrey Fisher through an open window and stole his wallet from his home office. Police officers were alerted and initiated a search of the area using a K-9 scent-tracking dog. During the search, a dispatcher told the officers about a white male attempting to break into a nearby BP gas station. Officers investigated and after a foot chase of that man, who was later identified as Williams, officers found him in possession of Fisher's wallet. The wallet contained a receipt for a purchase with Fisher's credit card minutes earlier at a nearby drug store. Store surveillance video confirmed the use of the card by Williams.

Williams did not object at trial to the evidence of the dispatch to the BP station. In his defense, Williams conceded that he unlawfully used Fisher's credit card and that he resisted arrest. But he denied that he was the person who burglarized the Fishers' home. Instead, Williams claimed that he found the wallet and that he had been too intoxicated to commit the burglary. The jury found Williams guilty of all charges. The trial court sentenced Williams to fifteen years

2

of imprisonment as a habitual offender pursuant to 11 *Del. C.* § 4214(a). This appeal followed.

Williams raises two claims on appeal. He first contends that the trial court committed plain error when it allowed the State to emphasize through four police officers and closing argument that Williams was arrested in this burglary case after the police responded to a call of an attempted burglary at the BP station. Second, Williams claims that the trial court plainly erred and unfairly bolstered police testimony when it provided an expert-witness jury instruction that referred to police officers because there was no qualified expert who testified at trial.

We find no merit to Williams' appeal. The record shows that Williams' trial counsel did not object to the evidence of the dispatch to the BP station for tactical reasons. Defense counsel also referred to the dispatch call during her closing argument in support of Williams' defense. This tactical decision constitutes a waiver that precludes plain error review. Even if Williams had objected or if defense counsel had not used the dispatch call as part of a trial strategy, any error in admitting the hearsay statements was harmless. We also find that the K-9 handler testified as an expert witness, which means that the expert-witness jury instruction was proper. Accordingly, we affirm.

## *Facts and Procedural History*

On the evening of October 14, 2012, Jeffrey Fisher heard a noise in his computer room while he and his wife were at home. He went to investigate the noise because he thought that his cat escaped through an open window. When he looked out the window for the cat, he saw a tall male running. Although no computer equipment was taken, Fisher's wife called 911 to report the incident. Fisher later learned that his wallet, which he normally left on the office desk, was missing.

Police were dispatched to the Fisher home. Shortly thereafter, dispatch advised nearby officers of a tall, white male at a local BP station attempting to kick in the front window or break into the business. Officer Louis Torres responded to the BP call and parked his car adjacent to the station. Officer Torres saw, a tall, shirtless, white male, crossing the BP parking lot. When that man, who was later identified as Williams, saw Officer Torres, he sprinted away. Officer Torres chased Williams, but he lost sight of him.

Minutes later, Officer Torres found Williams straddling a fence. Torres ordered Williams to get off the fence and surrender, but Williams refused and hopped the fence. Other officers apprehended Williams on the other side of the fence. Police found a wallet on the ground near Williams containing Fisher's driver's license, credit cards, and a receipt from a nearby Rite Aid. Detectives later

obtained surveillance video from the Rite Aid of Williams entering the store, approaching the register, and spreading out multiple credit cards on the counter before selecting one and purchasing a drink.

Williams was charged with burglary second degree, misdemeanor theft, unlawful use of a credit card, and resisting arrest. At trial, four officers testified to the call from dispatch about the incident at the BP station. Before jury deliberations, the trial court provided an expert witness instruction without objection. The instruction included a reference to law enforcement officer testimony. The jury convicted Williams on all counts. The trial court sentenced Williams to fifteen years at Level V incarceration, suspended after twelve years for decreasing levels of supervision. This appeal followed.

### *Discussion*

Williams contends that the trial court plainly erred, first, when it allowed the State to introduce inadmissible hearsay testimony from the police dispatch and, second, when it provided an expert-witness jury instruction without qualifying an expert in the case. Because Williams failed to raise these claims in the proceeding below, Williams must show plain error to have his conviction overturned on appeal.[1] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and

---

[1] *See Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (quoting Del. Sup. Ct. R. 8; *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).

integrity of the trial process."[2]  "[P]lain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[3]

When police officers testify about an investigation, "[b]ackground information may be necessary to give the jury a complete picture at trial and to ensure the jury is not confused in a way that would be unfavorable to the prosecution."[4]  Such information should be primarily used to "fill in gaps" and "help the jury understand the case in context."[5]  But problems can occur where a statement can serve more than one purpose.  As we have stated:

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct.  His testimony that he acted "upon information received," or words to that effect, should be sufficient.  Nevertheless, cases abound in which the officer is allowed to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted.  The need for the evidence is slight, the likelihood of misuse great.[6]

---

[2] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (citing *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).

[3] *Id.* (citing *Bromwell v. State*, 427 A.2d 884, 893 n.12 (Del. 1981)).

[4] *Sanabria v. State*, 974 A.2d 107, 112 (Del. 2009).

[5] *Id.* (quoting *People v. Resek*, 821 N.E.2d 108, 109–10 (N.Y. 2004)).

[6] *Johnson v. State*, 587 A.2d 444, 448 (Del. 1991) (quoting Edward W. Cleary, *McCormick on Evidence* § 249, at 734 (3d ed. 1984)).

6

Where evidence can be used for more than one purpose, the "preferable practice" is to allow the State to introduce the background evidence based "upon information received" rather than introducing specific statements.[7] Alternatively, the trial court can provide a limiting instruction explaining "the purpose for which the testimony is received" in order to "avert[] any prejudice to the defendant."[8] Nonetheless, where the trial court fails to limit the hearsay statements or provide a limiting instruction, such error is still subject to harmless error review.[9]

Williams argues that plain error occurred here. In *Wright v. State*, we explained that "[t]he plain error standard of appellate review is predicated upon the assumption of oversight."[10] But where "the record reflects that the decision not to object at trial was a 'deliberate tactical maneuver by' defense counsel and did not result from oversight, then that action constitutes a true waiver."[11] And we have consistently held that a "conscious decision to refrain from objecting at trial as a tactical matter" will preclude any plain error appellate review.[12]

---

[7] *McNair v. State*, 703 A.2d 644, 1997 WL 753403, at *2 (Del. 1997) (quoting *McCormick on Evidence*, *supra*, § 249, at 734).
[8] *Sanabria*, 974 A.2d at 116 (quoting *Curry v. Burge*, 2004 WL 2601681, at *25 (S.D.N.Y. Nov. 17, 2004)).
[9] *See Johnson*, 587 A.2d at 451.
[10] *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009) (citing *Tucker v. State*, 564 A.2d 1110, 1118 (Del. 1989)).
[11] *Id.* (citing *Czech v. State*, 945 A.2d 1088, 1097 (Del. 2008)).
[12] *Id.*; *e.g.*, *Czech*, 945 A.2d at 1098; *Crawley v. State*, 929 A.2d 783, 2007 WL 1491448, at *3 (Del. 2007); *Tucker*, 564 A.2d at 1125.

7

Despite Williams' plain error claim, we find that plain error review of the officers' hearsay statements is inapplicable. The record shows that defense counsel did not object to the admission of this hearsay evidence for tactical reasons. Specifically, defense counsel argued that dispatch's description of Williams at the BP station was not the same as Fisher's description.[13] Because Williams' failure to object to the admission of the officers' hearsay statements appears to have been a conscious, tactical choice, any plain error review was waived. Given the lack of an objection and the strategic use of the dispatch's statements in closing arguments, Williams' first claim of plain error is without merit.

Even if Williams had objected below, any error in admitting the hearsay evidence was harmless beyond a reasonable doubt. Our harmless error standard for improperly admitted evidence is well-established. "[W]here the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction,

[13] In her closing argument, defense counsel told the jury:

> Later when the BP calls, or someone calls and said there's someone at the BP kicking either a gas pump or the door to the building, and that person is a white male with dark hair, don't confuse the two descriptions. And for one second let's talk about tall. I am not tall. Detective Sendek is six-feet tall, he told you that yesterday. Sergeant Norris is six-feet tall. I didn't ask Jeff Fisher how tall he was, but you were able to observe him. He said a tall man. Detective Sendek first wanted to tell you that Brandon Williams is the same height he is until, once again, he had to be shown a piece of paper he completed and tell you that it said Brandon Williams was five-feet-eight-inches tall. So ask yourself if somebody the size of Jeff Fisher is going to describe somebody who is five-feet-eight-inches tall as tall.

Appellant's Op. Br. Appendix at A45.

error in admitting the evidence is harmless."[14]  Harmless error and plain error are distinct but analogous doctrines.  Harmless error is "[a]ny error, defect, irregularity or variance which does not affect substantial rights."[15]  Whereas plain error concerns "errors or defects affecting substantial rights [that] may be noticed although they were not brought to the attention of the court."[16]  "[T]he difference between harmless error and plain error is that for plain error, 'it is the defendant who bears the burden of persuasion with respect to prejudice.'"[17]  Under a harmless error analysis, "[t]he defendant has the initial burden of demonstrating error," and then the State has the burden to demonstrate that any error was harmless beyond a reasonable doubt.[18]  Even assuming error in the cumulative use of the dispatch call, that error was harmless.

In *Sanabria v. State*, we reversed a conviction where a dispatcher's out-of-court statements were introduced, and we "determined that the trial judge in *Sanabria* had erred by failing to provide a limiting instruction and in admitting testimony in violation of the Confrontation Clause of the Sixth Amendment."[19] This was because the out-of-court statements in that case were "not merely

---

[14] *Johnson*, 587 A.2d at 451 (quoting *Collins v. State*, 420 A.2d 170, 177 (Del. 1980)).
[15] Super. Ct. Crim. R. 52(a).
[16] Super. Ct. Crim. R. 52(b).
[17] *Bullock v. State*, 775 A.2d 1043, 1055 n.43 (Del. 2001) (Veasey, C.J., concurring) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).
[18] *Dawson v. State*, 608 A.2d 1201, 1204 (Del. 1992) (citing *Chapman v. California*, 386 U.S. 18, 24, 26 (1967)).
[19] *Holmes v. State*, 11 A.3d 227, 2010 WL 5043910, at *5 (Del. 2010) (citing *Sanabria*, 974 A.2d at 116–20).

cumulative evidence," but instead were "a principal factor in [the] conviction."[20]

Unlike *Sanabria*, the statements relating to the alleged attempted burglary at the BP station were not a principal factor in Williams's conviction. Rather, the record shows that the sequence of events and timeline were the principal factors supporting Williams' conviction.

At roughly 11 p.m., Fisher heard a noise in his office and saw a tall male running from his home. By 11:14, Williams had entered the Rite Aid and purchased a beverage three minutes later. Fisher's wife called 911 at 11:18, and dispatch relayed information about the Fisher burglary at 11:20. Approximately seven minutes later, dispatch advised officers that there was a disturbance involving a tall, white male at the BP station, which was a quarter mile away from the Fishers' home. Officer Torres went to the BP station, where he first saw Williams at 11:36. Williams fled and a foot chase ensued. Officers ultimately captured Williams at 11:44 p.m.

In addition to this timeline, Williams was found at the time of his arrest with Fisher's wallet, driver's license, and credit cards. Williams used one of the cards to make an unauthorized purchase as shown by the surveillance video and the receipt. Evidence of his flight was also relevant to show consciousness of guilt. This evidence was sufficient to sustain the conviction. Because the dispatch

---

[20] *Sanabria*, 974 A.2d at 120.

statement about the events at the BP station was not a principal factor in the conviction, any error in the admission of the dispatch statements was harmless.

Williams next claims that the trial court unfairly bolstered the testimony of a police officer when it issued an expert-witness jury instruction because there was no expert witness in the case. "Implicit in every jury instruction is the fundamental principle that the instruction applies to the specific facts in that particular case and contains an accurate statement of the law."[21] This Court will reverse only "if the instructions 'undermined . . . the jury's ability to intelligently perform its duty in returning a verdict.'"[22]

In *Smith v. State*, we outlined the standard to determine the propriety of a jury charge:

> In evaluating the propriety of a jury charge, we view the jury charge as a whole with no individual statement read in a vacuum. "The standard is not one of perfection; some inaccuracies and inaptness in statement are to be expected in any charge." Even where there are some inaccuracies in a charge, we will reverse only if the alleged deficiency in the jury instructions undermined the jury's ability to "intelligently perform its duty in returning a verdict."[23]

Here, the trial judge gave an expert witness instruction, providing:

---

[21] *Bullock v. State*, 775 A.2d 1043, 1053 (Del. 2001).

[22] *Moye v. State*, 988 A.2d 937, 2010 WL 376872, at *2 (Del. 2010) (omission in original) (quoting *Bullock*, 775 A.2d at 1047).

[23] *Smith v. State*, 913 A.2d 1197, 1241–42 (Del. 2006) (footnotes and internal quotation marks omitted) (quoting *Bullock*, 775 A.2d at 1047, 1056 n.47; *Floray v. State*, 720 A.2d 1132, 1138 (Del. 1998); *Sirmans v. Penn*, 588 A.2d 1103, 1104 (Del. 1991)).

11

A witness who has special knowledge in a particular science, profession or subject is permitted to testify about that knowledge and to express opinions within the witness's field of expertise to aid you in deciding the issues. You should give expert testimony the weight you consider appropriate. In addition to the factors already mentioned for weighing the testimony of any other witness, you may consider the expert's qualifications, the reasons for the expert opinion, and the reliability of the information assumptions upon which it is based. Also, you must not give any more or less credit to a law officer's testimony simply because he is a law officer.[24]

Williams did not object to this instruction. Nor would an objection have been sustained if made. The record demonstrates that the trial court did qualify Corporal Breitigan as an expert witness to testify about the proper handling of a K-9 police dog.

Prior to Corporal Breitigan's testimony, defense counsel argued that Corporal Breitigan was not listed as an expert witness in violation of the rules of discovery. The trial court overruled the objection, explaining that it did not "see any violation of a rule of discovery" or "any prejudice assuming that there were a violation."[25] The trial court further ruled that it was "satisfied" that Corporal Breitigan could "testify about the dog's training and what [the dog] did."[26] He did so. Because Corporal Breitigan was qualified as an expert and testified as one, the

---

[24] Appellant's Op. Br. Appendix at A52.
[25] *Id.* at A18.
[26] *Id.*

jury instruction concerning his expert testimony could not have been erroneous or prejudicial. Thus, Williams' second claim also lacks merit.

### *Conclusion*

The judgment of the Superior Court is **AFFIRMED**.