# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JESSIE THOMAS, | § | |
| | § | No. 501, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware in |
| v. | § | and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1304013732 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: February 11, 2015
Decided: May 8, 2015

Before **HOLLAND**, **VALIHURA** and **VAUGHN**, Justices.

### O R D E R

This 8th day of May 2015, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response, it appears to the Court that:

(1) In May 2013, the appellant, Jessie Thomas, was indicted on two counts of Possession of a Firearm by a Person Prohibited ("PFBPP"), two counts of Carrying a Concealed Deadly Weapon ("CCDW"), and one count of Possession of Ammunition by a Person Prohibited ("PABPP"). At Thomas' jury trial in February 2014, the parties stipulated that Thomas was a person prohibited from possessing a firearm and ammunition.

(2)  The jury convicted Thomas of one count each of PFBPP and CCDW and the single count of PABPP and acquitted him on the remaining counts.  On August 28, 2014, the Superior Court sentenced Thomas to a total of twenty-one years at Level V imprisonment, suspended after seven years for decreasing levels of supervision.  This is Thomas' direct appeal.

(3)  On appeal, Thomas' appellate counsel ("Counsel") has filed a brief and a motion to withdraw under Supreme Court Rule 26(c) ("Rule 26(c)").[1]  Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues.  Thomas, through Counsel, has submitted six claims for the Court's consideration.  In its response, the State has moved to affirm the Superior Court's judgment.

(4)  When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[2]  Also, the Court must conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[3]

---

[1] Thomas was represented by different counsel at trial.

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[3] *Penson v. Ohio*, 488 U.S. at 81.

(5) In this case, the probable cause affidavit in the Superior Court record reflects that, during the evening of April 15, 2013, Wilmington Police Officer Anthony Easterling received a confidential tip that a black male known as "Black Nose" had just pointed a firearm at another black male known as "Ike." The confidential informant told Officer Easterling that the location of the disturbance was Sixth and Jefferson Streets, and that Black Nose was dressed in a gray jacket and blue jeans and driving a white Volvo.

(6) Officer Easterling relayed the confidential tip to Detective Robert Fox. At approximately 8:50 p.m., Detective Fox radioed the tip to Officer Matthew Geiser and Corporal Justin Cannon (collectively "Geiser and Cannon"), who were on patrol in the area. When driving the short distance to Sixth and Jefferson Streets, Geiser and Cannon were contacted by Detective Steven Barnes, who advised that he knew Black Nose as Jessie Thomas.

(7) Upon arriving at Sixth and Jefferson Streets, Geiser and Cannon observed a white Volvo station wagon parked on the west side of Jefferson Street. Although the Volvo's side and back windows were heavily tinted, Geiser and Cannon could see through the front windshield that a black male wearing a gray jacket was sitting in the driver's seat.

(8)     After circling the block, Geiser and Cannon followed the Volvo, as it had started travelling north on Jefferson Street.  In the 800 block of Jefferson Street, after observing the Volvo pull to the side of the road without signaling, Geiser and Cannon activated the patrol vehicle's emergency equipment and initiated a vehicle stop.

(9)     Officer Geiser made contact with the driver while Corporal Cannon remained in the patrol vehicle to call in the stop.  When approaching the driver's side of the Volvo, Officer Geiser could see that the driver was sitting in the driver's seat with his hand out of the window.  Officer Geiser advised the driver that he could not see into the Volvo due to the heavy window tinting, and he asked the driver to keep his hands in plain sight. When the driver abruptly moved his hands into his lap, Officer Geiser pulled his service weapon and directed the driver to get out of the car.  At trial, Officer Geiser testified that he drew his weapon because he could not see what the driver was doing and he "was too close to the car to retreat in case [the driver] had something."[4]  Once the driver was outside of the car, Officer Geiser moved the driver to the rear bumper area where another officer patted him down.  While this was happening, Officer Joseph Lucyk, who had arrived as back up, checked the Volvo for passengers.

---

[4] Trial tr. at 15 (Feb. 26, 2014).

(10)    At trial, Officer Lucyk testified that, from where he stood outside the still-open door of the Volvo, he could see the barrel of a gun protruding from underneath the driver's seat.  Officer Lucyk immediately alerted the other officers that the driver should be taken into custody.  At that point, the driver, Thomas, was placed under arrest, and Officer Lucyk left the scene to respond to another call.  At trial, Officer Lucyk estimated that he was at the scene a total of "three to six minutes."[5]

(11)    After Thomas was arrested and secured in Geiser and Cannon's patrol vehicle, Officer Geiser drove him to the police station.  Corporal Cannon drove the Volvo to the police station and secured it in the staff garage.  Later that evening, after obtaining a search warrant, Corporal Cannon and other officers searched the Volvo.  They seized a loaded semi-automatic Taurus handgun from under the front seat, a loaded semi-automatic Mauser handgun that was found to the left of the brake pedal, and personal papers and photographs of Thomas.

(12)    On appeal, Thomas has raised six overlapping claims of error, including ineffective assistance of counsel.  None of Thomas' claims was raised at trial.  As a result, with the exception of the ineffective counsel

---

[5] *Id.* at 41.

claim, which is not reviewable on direct appeal,[6] we have reviewed the claims for plain error.[7] Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[8]

(13) Thomas claims that Detective Barnes' trial testimony was inadmissible hearsay. On plain error review, the claim is without merit. The record reflects that Detective Barnes' testimony was limited to his personal experience and first-hand observations of Black Nose, who Detective Barnes knew as Thomas. Detective Barnes' testimony was not hearsay.[9]

(14) Thomas claims that Geiser and Cannon did not have a legitimate basis to stop the Volvo. On plain error review, the claim is without merit. The record reflects that Geiser and Cannon had probable cause to stop the Volvo for the traffic violation they observed.[10]

---

[6] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

[7] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[8] *Id.*

[9] *Jenkins v. State*, 8 A.3d 1147, 1153 (Del. 2010) (concluding that witness' testimony "based on firsthand observations of which he had personal knowledge" was not hearsay).

[10] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

(15) Thomas claims that, even if the initial traffic stop was valid, Officer Geiser's conduct during the stop violated Thomas' right to be free from unreasonable search and seizure.

> During a lawful traffic stop, a police officer may order . . . the driver . . . out of the vehicle pending completion of the traffic stop. The scope and duration of the detention must be reasonably related to the initial justification for the traffic stop. A police officer may not conduct a pat down search of a person during a traffic stop unless the office has reasonable suspicion that the person subject to the frisk is armed and dangerous.[11]

In this case, the Court finds, based on the record, that Officer Geiser had a reasonable belief that Thomas was armed and dangerous when, as Geiser approached the Volvo, Thomas suddenly concealed his hands.[12] On plain error review, Thomas' claim to the contrary is without merit.

(16) Thomas claims that Officer Geiser's trial testimony concerning the reported disturbance at Sixth and Jefferson Streets was inadmissible hearsay. On plain error review, the claim is without merit. Officer Geiser's testimony about the reported disturbance was not a "principal factor" in

---

[11] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citations omitted). *See also Rodriguez v. United States*, No. 13-9972, 2015 WL 1780927 (U.S. April 21, 2015) (holding that police may not extend otherwise-completed traffic stop, absent reasonable suspicion, to conduct dog sniff).

[12] *Moore v. State*, 997 A.2d 656, 666-67 (Del. 2010).

7

Thomas' convictions.[13] Thomas convictions were based on evidence seized under a search warrant issued after a lawful traffic stop. To the extent Officer Geiser's testimony was inadmissible hearsay, its admission was harmless error.[14]

(17) Thomas claims that there was insufficient evidence to support his convictions. On plain error review, the claim is without merit. When a defendant claims that the evidence against him was insufficient to support a jury verdict, this Court must determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[15] In this case, viewing the evidence in the light most favorable to the State, a reasonable jury could find, beyond a reasonable doubt, that Thomas, a person prohibited, was guilty of PFBPP (possessing a firearm), CCDW (carrying a concealed deadly weapon), and PABPP (possessing ammunition).

---

[13] *Compare Williams v. State*, 98 A.3d 917, 922 (Del. 2014) (holding that any error in admission of non-testifying police dispatcher's out-of-court statements to responding officer was harmless because the statements were not a principal factor in the conviction), *with Sanabria v. State*, 974 A.2d 107, 121 (Del. 2009) (holding that admission of non-testifying police dispatcher's out-of-court statements to responding officer was unduly prejudicial when statements were admitted without a limiting instruction and were a principal factor in the conviction).

[14] *Williams v. State*, 98 A.3d 917, 922 (Del. 2014).

[15] *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1993).

(18)  The Court has reviewed the record carefully and has concluded that Thomas' appeal is wholly without merit and devoid of any arguably appealable issue.  We are satisfied that Counsel made a conscientious effort to examine the record and the law and properly determined that Thomas could not raise a meritorious claim on direct appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED.  The judgment of the Superior Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

/s/ Karen L. Valihura
Justice