IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONOVAN KENT, | § | |
| | § | No. 287, 2020 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. N181002038 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |

Submitted: July 14, 2021
Decided: September 24, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 24th day of September 2021, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The Defendant-Appellant, Donovan Kent ("Kent"), was convicted after a jury trial in Superior Court of two counts of Attempted Rape in the Second Degree, three counts of Unlawful Sexual Contact in the First Degree, and one count of Continuous Sexual Abuse of a Child.   On appeal Kent argues that five of the six convictions should be vacated.   He does not challenge one of the convictions for

Unlawful Sexual Contact in the First Degree.[1] With regard to the five convictions that are challenged, he makes four claims. First, he contends that the Superior Court erred in not *sua sponte* issuing a judgment of acquittal on Count VI, Continuous Sexual Abuse of a Child, because the evidence failed to establish that the alleged acts of sexual misconduct occurred over a period of not less than three months. The offense requires that the defendant have committed three or more acts of sexual misconduct during a period of not less than three months. Second, he contends that the court's jury instructions regarding the three-month element confused the jury. Third, he contends that the court erred in allowing the State to amend one of the rape counts in the indictment, Count IV, after the close of evidence. And fourth, he contends that the court erred in not *sua sponte* issuing a judgment of acquittal on the other rape count, Count I, and two of the Unlawful Sexual Contact counts, Counts II and III. He alleges that there was no evidence from which a jury could infer that the alleged conduct supporting those counts occurred within the time frame stated in the indictment. We find no merit to Kent's claims and affirm.

(2) On March 12, 2018, Kent was indicted on two counts of Rape in the Second Degree, three counts of Unlawful Sexual Contact in the First Degree, and one count of Continuous Sexual Abuse of a Child, all involving a minor, S.A. In the indictment, the time frame for each of the six counts was stated as being "on or

[1] The conviction not challenged is Count V of the indictment.

2

between the 1ˢᵗ day of July, 2017, and the 11ᵗʰ day of October, 2017."[2]  Both rape counts and the two Unlawful Sexual Contact counts challenged on appeal are alleged in the indictment to have occurred at "S.A.'s Aunt's residence."[3]  The Continuous Sexual Abuse of a Child count does not include a specific location.

(3)  On October 10, 2017, S.A.—who was six years old at the time—told her mother, Jessica Hepner, that "something happened with [Kent]."[4]  After S.A. explained what happened, Hepner confronted Kent and he left the home.  Hepner then took S.A. to Christiana Hospital where she was interviewed and examined by Angela McNulty, a forensic nurse examiner.  McNulty swabbed S.A. for potential DNA.

(4)  Lesley Merkle, a senior DNA analyst at the Delaware Division of Forensic Science, testified at trial that she received a sexual assault evidence kit and a buccal reference taken from Kent.  According to Merkle, no sperm was detected, but male DNA was detected on one of the swabs from S.A.'s labia majora.  However, due to the very small amount of DNA, she was unable to make detectable copies to determine whose male DNA it was.

(5)  In November 2017, S.A. was interviewed by Kimberley Carpenter, a forensic interviewer at the Children's Advocacy Center of Delaware in A.I. Hospital.

---

[2]  App. to Appellant's Op. Br. at A000001, A000011-13 [hereinafter A__].
[3]  A000011-12.
[4]  A000120-21.

(6)    At trial, S.A.'s mother, gave the following testimony.   At the end of July or beginning of August 2017, Hepner, Christopher Adams, and their three children (S.A., C.S., and D.A.) moved into a new home.   Kent, who was a longtime family-friend, moved in with them.   Previously, Kent lived at S.A.'s aunt's house. He began staying there in May 2017.   When Hepner's family moved into the new home it was undergoing renovations, which left only one bedroom available. Hepner, Adams, and D.A. slept in the bedroom while Kent, S.A., and C.S. slept in the living room on the first floor.

(7)    S.A. testified briefly.   She testified that when she was six years old and Kent was living with her, something happened with Kent "a lot" that she did not like.[5]   During her testimony, the interview with forensic interviewer Carpenter, which had been recorded, was played pursuant to 11 *Del. C.* § 3507.   In the interview, S.A. explained that Kent touched her privates in her underwear and her behind with his hands.   Kent put his private on her leg at Aunt Carolyn's house. Kent touched her at "Aunt Carolyn's and at my house."[6]   "At my Aunt Carolyn's it only happened one time and at my house it happened like a lot."[7]   The single incident at Aunt Carolyn's house involved multiple acts.   At Aunt Carolyn's house

---

[5] A000184.
[6] Court Exhibit 1.   The recorded interview was marked as a Court Exhibit but was not given to the jury during their deliberations.
[7] *Id*.

4

her private hurt the next morning. At her house, it happened on the first floor in the living room. During the interview, S.A. identified her "private" and Kent's "private" on anatomically correct diagrams and demonstrated what happened using anatomically correct dolls.[8] After the video recording was played, S.A. was re-called to the witness stand and testified that everything said in the interview about Kent was the truth.

(8) Forensic Nurse Examiner McNulty testified about her interview with S.A. McNulty asked S.A. a series of questions which are documented in a report along with S.A.'s accompanying responses. S.A. told McNulty that "[Kent] had the S-E-X with me," "he put his hands inside of me and he put his privates on my leg[,]" and "[i]t happened a lot at my house but only once at my uncle Brandon's house."[9] McNulty testified that her examination revealed an area of redness above S.A.'s hymen, which is an injury that could be consistent with being sexually assaulted.

(9) At the close of evidence, Kent moved for judgment of acquittal on one of the Rape Second Degree counts, arguing that there was no evidence that a second rape occurred at S.A.'s aunt's house. Kent also argued that both rape counts should be dismissed because the element of penetration was missing. The court denied

---

[8] *Id*.

[9] A000078-79. "Uncle Brandon" is referring to Brandon Hepner, S.A.'s uncle, who lives with his wife, Carolyn Irving, S.A.'s aunt. Their house is "S.A.'s Aunt's residence," identified in the indictment.

Kent's motions. The State moved to amend the indictment to remove the word "Aunt's" from Count IV, the second rape count, so that Count I stated "S.A.'s Aunt's residence," and Count IV stated "S.A.'s residence."[10] The prosecutor explained that placing both counts at the aunt's house was a mistake that she did not notice until jury instructions; that the specific locations were not essential to the indictment; and that the State's intent had been to state that one count occurred at S.A.'s Aunt's residence and the other occurred at S.A.'s residence to distinguish between otherwise identical counts. Additionally, the State moved to amend four counts in the indictment to expand the date range to include May and June of 2017.[11] The court granted the amendment to remove the word "Aunt's" from one of the rape counts, Count IV, finding that it was not a substantive change because Kent had been on notice that the conduct happened in both locations. However, the court denied the motion to expand the date range, finding that it would constitute a substantive change to the charges.

(10) Turning to Kent's claims on appeal, he first argues that the court erred in not *sua sponte* issuing a judgment of acquittal on Count VI, Continuous Sexual Abuse of a Child, because the evidence failed to establish that the qualifying acts of sexual misconduct occurred over a period of not less than three months.

---

[10] A000344.

[11] It appears that those counts were Counts I, II, III and IV.

(11)　"[I]t is well-settled that in a jury trial, if a defendant fails to make a motion for acquittal to the trial court, the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, and we would apply the plain error standard of review."[12]　"Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[13]　"[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[14]

(12)　Under the Continuous Sexual Abuse of a Child statute:

> A person is guilty of continuous sexual abuse of a child when, either residing in the same home with the minor child or having recurring access to the child, the person intentionally engages in 3 or more acts of sexual conduct with a child under the age of 18 years of age over a period of time, not less than 3 months in duration.[15]

---

[12] *Williamson v. State*, 113 A.3d 155, 157 (Del. 2015) (citing Del.Supr. Ct. R. 8 and *Williams v. State*, 98 A.3d 917, 920 (Del. 2014)).　Kent argues that while normally we would review this claim for plain error, "when assessing an insufficiency of evidence claim such as ours, this Court will excuse waiver and determine whether a 'rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt.'" Appellant's Op. Br. at 8 (quoting *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995)).　Kent's argument that we are not reviewing his insufficiency of the evidence claim within the plain error standard based on *Monroe* is mistaken.　In *Monroe*, the Court reviewed for plain error, holding that there was plain error due to insufficient evidence.　*See id.* at 563, 568.
[13] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).
[14] *Id.*
[15] 11 *Del. C.* § 776(a).

7

Kent argues that the only alleged sexual conduct that could qualify under the statute was conduct that occurred at S.A.'s home, not her aunt's home, because S.A. did not reside at her aunt's home while Kent was living there and Kent did not have recurring access to her at that point. Because Kent was only at S.A.'s home from the end of July to the beginning of October, he argues, the conduct that occurred there occurred during less than a three-month period. Alternatively, Kent argues that even if he is considered as having recurring access to S.A. while he was living at the aunt's residence, the three-month element is still not satisfied because the last alleged sexual misconduct occurred on or about October 3rd, one week before S.A. reported the misconduct to her mother, and there was no evidence indicating that S.A.'s sleepover at her aunt's house took place between July 1st, the earliest date set forth in the indictment, and July 3rd (the beginning of the three month period ending October 3.) Thus, according to Kent, the requisite period of not less than three-months was still not proved.

(13) Evidence was presented at trial that Kent was living at S.A.'s aunt's home in May through July and then moved into S.A.'s home at the end of July or in August. The evidence established that sexual abuse comprised of multiple acts occurred once at the aunt's home and "a lot" at the mother's home. Although the exact date of the abuse at the Aunt's residence was not specified by direct evidence, whether the evidence circumstantially established that the abuse occurred over a

8

period of not less than three months could have been viewed by the trial judge as presenting a question of fact for the jury. We are not persuaded that the trial judge should have intervened *sua sponte* and granted a judgment of acquittal in the absence of a defense motion. Plain error is a demanding standard, and there is no plain error here.

(14) Kent's second claim is that the court's jury instructions regarding the three-month element in Continuous Sexual Abuse of a Child confused the jury. Because defense counsel did not object to the jury instructions as given, we again review for plain error.[16]

(15) During the instructions, the trial judge read each count of the indictment, explaining that the indictment contained the accusations against the defendant and was not itself evidence of guilt. The count on continuous sexual abuse of a child was read as follows:

> Count VI, continuous sexual abuse of a child: Donovan Kent, on or between the 1st day of July 2017, and the 11th day of October 2017, a period of time not less than three months in duration, in the County of New Castle, State of Delaware, while residing in the same home with a minor child or having recurring access to the child, did intentionally engage in three or more acts of sexual conduct with [S.A.], a child of less than 14 years of age.

---

[16] *Mills v. State*, 201 A.3d 1163, 1179 (Del. 2019).

(16)   After reading each count of the indictment, the trial judge instructed the jury as to each count.   The instruction on Count VI was as follows:

> In order to find the defendant guilty of continuous sexual abuse of a child, you must find that the State has proved all of the following five elements beyond a reasonable doubt: One, the defendant engaged in three or more acts of sexual conduct with the child, in this case [S.A.], during the timeframe alleged in each individual count, Count I, II, III, IV or V; and two, at the time of the acts of sexual conduct that the defendant resided in the same home as [S.A.] or had recurring access to her; and three, [S.A.] was less than 14 years of age at the time of the act of sexual conduct; and four, the act of sexual conduct occurred over a period of time of not less than three months in duration; and five, the defendant acted intentionally.[17]

(17)    Kent argues that the jury instructions regarding the three-month requirement confused the jury because they did not make sense when considered along with the indictment.   He argues that "[t]he indictment's phrasing erroneously applies the three-month requirement to the preceding phrase—the time frame considered by the indictment—as opposed to the time frame between the first and last incident of qualifying sexual conduct."[18]   He concludes that there "is a reasonable likelihood that the jury was confused" because "the jury was provided with an instruction containing the proper law, and an indictment, inconsistent with that law, and applying incorrect law."[19]

---

[17] A000411-13.
[18] Appellant's Op. Br. at 14.
[19] Appellant's Op. Br. at 17.

(18) Kent's argument has no merit. The trial judge's instruction on Continuous Sexual Abuse of a Child mirrored the statutory language. The instruction clearly, expressly and without confusion instructed the jury that in order to find the defendant guilty Continuous Sexual Abuse of a Child it must find that the acts of sexual conduct "occurred over a period of time of not less than three months." There is no inconsistency between the indictment and the instructions, and no plain error.

(19) Kent's third claim is that the trial judge erred and violated his due process and double jeopardy rights by allowing the State to amend one of the rape counts in the indictment. "This Court reviews the Superior Court's decision on a motion to amend an indictment for abuse of discretion."[20] This Court reviews claims of a constitutional violation *de novo*.[21]

(20) Under Superior Court Rule of Criminal Procedure 7(e), "[t]he court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." "[I]f the indictment adds or changes the crime charged, or if the amendment prejudices the defendant, then the State may not amend its indictment. An amendment is not permitted if it changes an essential element of

---

[20] *Cuffee v. State*, 2014 WL 5254614, at *2 (Del. Oct. 14, 2014).
[21] *Zebroski v. State*, 12 A.3d 1115, 1119 (Del. 2010) (en banc) (citing *Hall v. State*, 788 A.2d 118, 123 (Del. 2001)).

11

the charged offense . . . [or] prevents the defendant 'from pursuing his initial defense strategy.'"[22]

(21)    As mentioned, the State moved to amend the indictment to remove the word "Aunt's" from one of the rape counts, so that one count occurred at "S.A.'s residence" and the other at "S.A.'s Aunt's residence."    The court granted the amendment, explaining that "there is no substantive change to the location because the defendant has been on notice that this happened in both locations, I should say, that the location, he's on notice and has been on notice with respect to the location."[23]

(22)    Kent argues that the amendment improperly prosecuted him for a crime that the grand jury never found probable cause for and forced him "to defend against different conduct, with different elements;" "had the effect of charging an entirely different crime;" and "forced [him] to defend against previously uncharged allegations."[24]    Kent further argues that allowing the amendment also prejudiced his motion for judgment of acquittal, which was based on his argument that there was no evidence of more than one rape at S.A.'s aunt's house.

(23)    The trial judge, in her ruling, implicitly found that the proposed amendment did not surprise or prejudice the defendant.    We agree.    The

---

[22] *Mitchell v. State*, 2014 WL 1202953, at *3 (Del. Mar. 21, 2014) (citing *O'Neal v. State*, 691 A.2d 50, 55 (Del. 1997)).
[23]  A000346.
[24]  Appellant's Op. Br. at 3, 22, 23.

12

amendment did not add an offense or substantively change a charged offense. The trial judge did not abuse her discretion by granting the amendment.

(24) Kent's last argument is that the court erred in not *sua sponte* issuing a judgment of acquittal on Counts I, II, and III, all of which alleged offenses occurring at the aunt's residence, because there was no evidence from which a jury could infer that the alleged conduct occurred within the time frame stated in the indictment. Since not raised below, this argument is also reviewed for plain error.

(25) Count I, Rape in the Second Degree, and Counts II and III, both Unlawful Sexual Contact in the First Degree, charged Kent with sexual conduct that occurred at the aunt's residence between July 1 and October 10, 2017. Kent argues that the evidence "can only establish that these incidents occurred at some point between May and the end of July, 2017."[25] Kent argues that, because he lived at S.A.'s aunt's house from May to the end of July, it is more likely that the conduct at S.A.'s aunt's house occurred sometime in May or June than in the time frame stated in the indictment.

(26) Kent's argument is purely speculative. Although it is possible that incidents alleged in Counts I, II or III may have occurred in May or June rather than July, a jury could rationally have inferred that the improper sexual conduct occurred at S.A.'s aunt's house in the timeframe stated in the indictment. Moreover, the date

---

[25] Appellant's Op. Br. at 26.

and time of each act of sexual abuse against a child victim does not need to be stated with exact specificity.   There was no plain error.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/    James T. Vaughn, Jr.
Justice